Samuel J. Silverman, J.
Plaintiff Pedro Rios is a quadraplegic as a result of an accident incurred while working on a farm in New York State. Plaintiff brought an action for *547 damages for Ms injuries. TMs action came on for trial before me and a jury in October, 1964. During the course of the trial the action was settled. After payment of attorney’s fees and so much of the lien of the compensation carrier as was not waived, there was left net for plaintiff a sum in excess of $50,000. In addition, one of the terms of settlement was that the compensation carrier would continue to pay plaintiff’s medical expenses which include full-time attendance 24 hours a day, 7 days a week, etc. These medical expenses have been running in excess of $20,000 a year.
Sometime after the settlement, plaintiff’s attorney, together with a representative of the Social Service Unit of the Workmen’s Compensation Board conferred with the court. Plaintiff’s attorney stated he was troubled that in view of plaintiff’s complete helplessness, there was serious danger that if the money was simply turned over to the plaintiff, persons whom he trusted would take advantage of him, thus perhaps causing him to lose the benefit of the money. Furthermore, plaintiff’s attorney stated that plaintiff desired to go back to Puerto Eico and plaintiff’s attorney did not know what facilities there were for taking care of plaintiff in Puerto Eico.
The court directed plaintiff’s attorney to bring on some sort of a petition for instructions and plaintiff’s attorney did, by order to show cause, bring on this motion for an order directing and regulating the distribution of the moneys due to plaintiff and for such other and further relief as to the court would seem just and proper. The court appointed Jerome Handler, Esq., as special guardian. Thereafter, a hearing was held before the court to which the plaintiff was brought. Thereafter, the court directed the special guardian to make further investigation and the special guardian reported that: (a) it appears likely that under proper conditions plaintiff’s physical welfare can be taken care of in Puerto Eico; and (b) that in the opinion of the special guardian plaintiff is not competent to care for himself or to manage his affairs, and that if the fund should ever come into his possession it would be dissipated and would not be preserved for the benefit of plaintiff. This report was made by affidavit dated June 25, 1965.
Plaintiff was a migratory farmworker who apparently never earned as much as $1,000 a year before his accident. He does not speak English. It seems unlikely the plaintiff can read or write Spanish. (Because of his physical disability he is unable to sign his name, his thumbprint and a cross constituting his signature on the indorsement of checks, etc.)
*548 At the court’s suggestion the special guardian inquired into the possibility of an inter vivos trust to be administered by a bank having a branch in Puerto Eico for plaintiff’s benefit, and the First National City Bank has stated that they would make every effort to accept an appointment as such a trustee as a matter of public interest. Plaintiff states that he does not want an inter vivos trust although it is not entirely clear whether he understands what is involved.
At the hearing before me, plaintiff insisted that at least $10,000 be given to his sister so that she could go down to Puerto Rico and buy a house; and declined to agree to let the money be handled by a bank as trustee in order to be sure that the money was properly applied.
The court is left with a strong suspicion that plaintiff needs the protection of the court.
Section 100 of the Mental Hygiene Law provides: “The supreme court * * *, have jurisdiction over the custody of a person and his property if he is incompetent to manage himself or his affairs by reason of age * * * or other cause. The court shall preserve the property of a person it declares incompetent from waste or destruction”. (Emphasis supplied.)
Accordingly, the court will treat the moving affidavit of plaintiff’s attorney Morris Hirschhorn dated January 11, 1965 as a petition for the declaration of incompetency of Pedro Rios pursuant to section 101 of the Mental Hygiene Law.
Although it appeared at the hearing that plaintiff had some minor children residing in Puerto Rico with his wife from whom he is separated, plaintiff’s closest relative living in the State is his sister Celia Laureano. As both the plaintiff and his sister were present in court at the preliminary hearing before me on April 28, 1965 and as the original order to show cause herein was served upon plaintiff, further notice of the presentation of the attorney’s affidavit (here treated as a petition in incompetency) is dispensed with.
The petition is granted to the extent that the questions of fact arising with respect to the competency of said Pedro Rios shall be tried before a jury at a Trial Term of this court in accordance with article 5-A of the Mental Hygiene Law.
As the sum of $50,006.90 is being held by the attorney for said Pedro Rios in an escrow account^ the court directs that said sum be deposited in an account in the joint names of Morris Hirschhorn, Esq., and the special guardian Jerome Handler, Esq., to be drawn upon only on joint signature and order of this court; and pursuant to section 101 of the Mental *549 Hygiene Law (subd. [7]) said Morris Hirschhorn, Esq., and Jerome Handler, Esq., are enjoined from assigning or otherwise disposing of the property of the alleged incompetent until further order of the court. I need hardly add that this provision is in no sense a reflection upon plaintiff’s attorney.
The special guardian is directed to settle an order in compliance with this decision. Said order may contain appropriate provision for a change of caption to show the present character of the proceeding as a proceeding in incompetency under article 5-A of the Mental Hygiene Law. He shall give notice of settlement of the order to the alleged incompetent, to his sister Celia Laureano and to Morris Hirschhorn, Esq. He shall further send copies of his reports of March 16, 1965 and June 25, 1965 to the alleged incompetent and to said Celia Laureano. All said service may be made by mail. The special guardian shall inform the alleged incompetent of his right to appeal from this order.
Settle order on notice.